

# GUILTY PLEA and PLEA AGREEMENT

United States Attorney
Northern District of Georgia

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION
CRIMINAL NO. 1:18-cr-00379

The United States Attorney for the Northern District of Georgia and the Environmental Crimes Section of the Environment and Natural Resources Division of the U.S. Department of Justice (collectively, "the Government") and Defendant Hyundai Construction Equipment Americas, Inc., enter into this plea agreement as set forth below in Part IV pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. Hyundai Construction Equipment Americas, Inc., Defendant, having received a copy of the above-numbered Information and having been arraigned, hereby pleads GUILTY to the Information.

## I.  ADMISSION OF GUILT

1. The Defendant admits that it is pleading guilty because it is in fact guilty of the crime charged in the Information.

## II. ACKNOWLEDGMENT & WAIVER OF RIGHTS

2. The Defendant understands that by pleading guilty, it is giving up the right to plead not guilty and the right to be tried by a jury.  At a trial, the Defendant would have the right to an attorney.  During the trial, the Defendant would be presumed innocent and the Government would have the burden of proving it guilty beyond a reasonable doubt.  The Defendant would have the right to

confront and cross-examine the witnesses against it.  If the Defendant wished, it could present evidence in its defense, and it could subpoena witnesses to testify on its behalf.  If the Defendant were found guilty after a trial, it would have the right to appeal the conviction.  The Defendant understands its right to be charged by Indictment.

3. The Defendant understands that by pleading guilty, it is giving up all of these rights and there will not be a trial of any kind.

4. By pleading guilty, Defendant also gives up any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could have been filed.

5. The Defendant also understands that it ordinarily would have the right to appeal its sentence and, under some circumstances, to attack the conviction and sentence in post-conviction proceedings.  By entering this Plea Agreement, the Defendant may be waiving some or all of those rights to appeal and to collaterally attack its conviction and sentence, as specified below.

6. Finally, the Defendant understands that, to plead guilty, it, through a duly authorized corporate representative, may have to answer, under oath, questions posed to it by the Court concerning the rights that it is giving up and the facts of this case, and the Defendant's answers, if untruthful, may later be used against it.

### III.   ACKNOWLEDGMENT OF PENALTIES

7. The Defendant understands that, based on its plea of guilty, it will be subject to the following maximum and mandatory minimum penalties:

**As to the sole charge in the Information**

    a.  Maximum fine: $500,000.00, or twice the gross pecuniary gain derived from the crime, or twice the gross pecuniary loss caused to the victims of the crime, whichever is larger, due and payable immediately.

    b.  Full restitution, due and payable immediately, to all victims of the offense(s) and relevant conduct.

    c.  Maximum term of five (5) years' probation

    d.  Mandatory special assessment:  $400 due and payable immediately.

8. The Defendant understands that, before imposing sentence in this case, the Court will be required to consider, among other factors, the provisions of the United States Sentencing Guidelines and that, under certain circumstances, the Court has the discretion to depart from those Guidelines. The Defendant further understands that the Court may impose a sentence up to and including the statutory maximum as set forth in the above paragraph and that no one can predict its exact sentence at this time.

## IV.   PLEA AGREEMENT

9. The Defendant, its counsel, and the Government, subject to approval by the Court, have agreed upon a negotiated plea in this case, the terms of which are as follows:

## No Additional Charges

10. The Government agrees not to bring further criminal charges against the Defendant related to the conduct underlying the charge to which it is pleading guilty.  The Defendant understands that this provision does not bar prosecution by any other federal, state, or local jurisdiction.  The nonprosecution terms of this paragraph do not apply to civil matters of any kind; any violation of the federal tax or securities laws or conspiracy to commit such offenses; any crime of violence; or perjury or subornation of perjury (18 U.S.C. §§ 1621-22), making a false statement or declaration during the pendency of the investigation (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), contempt (18 U.S.C. §§ 401-402), or conspiracy to commit such offenses.

11. The Defendant agrees to waive as set forth in this Paragraph the statute of limitations, and any other time-related defense, to the charge to which it is agreeing to plead guilty under this Plea Agreement. The Defendant understands and agrees that, should it seek to withdraw its plea, it may then be prosecuted for any criminal violation of which the Government has knowledge arising out of this investigation, subject to any applicable statute of limitation or other time related protection not waived in this paragraph. The Defendant agrees that if it does not enter its plea, or withdraws its plea, after signing this agreement, the time period between November 14, 2018, and its withdrawal shall be excluded from calculation of the limitations or time period.

4

## Factual Basis

12.    The parties agree that if this case went to trial, the Government would prove by admissible evidence and beyond reasonable doubt the following facts:

a. The purpose of the Clean Air Act and its implementing regulations was to protect human health and the environment by, among other things, reducing emissions of pollutants from new motor vehicles.

b. The Clean Air Act required the U.S. Environmental Protection Agency (EPA) to promulgate emissions standards for new motor vehicles, including nonroad compression-ignition (diesel) engines.

c. In October 1998, the EPA promulgated new regulations for nonroad compression-ignition engines based on their power as measured in kilowatts. These regulations established emission standards for the first time for engines under 37 kilowatts, and established more stringent standards for engines at or above 37 kilowatts.

d. The EPA subsequently promulgated more stringent requirements for these same engines, known as Tier 4. These standards were implemented in 2011 for engines in the power range of 130 kilowatts up to, but not including, 560 kilowatts. The standards were implemented in 2012 for engines in the power range of 56 kilowatts up to, but not including, 130 kilowatts.

e. The EPA regulations included the Transition Program for Equipment Manufacturers (TPEM), which consisted of a number of

5

regulatory provisions designed to provide equipment manufacturers with some flexibility over the transition process to the new standards. Generally, TPEM exempted a limited number of equipment with engines that did not meet the applicable Tier 4 standards from the prohibition against introducing such equipment into commerce in the United States, provided the equipment manufacturer complied with the TPEM regulations.

f.  In each relevant power category of engine, the equipment manufacturer choosing to participate in TPEM was required to elect one of two allowances:  (1) the Percent of Production Allowance or (2) the Small Volume Allowance.  For an equipment manufacturer's U.S.-directed production volume, these two allowances allowed equipment manufacturers to produce, in each power category, a certain number of units with exempted engines subject to less stringent emission standards after the Tier 4 standards began to apply. Once the allowances were exhausted, the manufacturer was required to comply fully with the Tier 4 standards, unless another exemption applied.

g.  The manufacturer participating in TPEM was required to notify the EPA whether it intend to comply with the Percent of Production Allowance or the Small Volume Allowance.

6

h. The manufacturer of TPEM equipment participating in TPEM was required to file annual reports with the EPA that included the following information:

    i. The total number of units sold in the preceding years for each power category based on actual U.S.-directed production information; and

    ii. The percentages of U.S.-directed production that corresponded to the number of units in each power category and cumulative numbers and percentages (if applicable) of units for all TPEM units sold for each power category.

i. Hyundai Heavy Industries Co., Ltd. (HHI), was a company headquartered in the Republic of Korea (South Korea).

j. Hyundai Construction Equipment Americas, Inc. (HCEA) was a wholly-owned subsidiary of HHI headquartered in Norcross, Georgia.

k. S.M.Y. was the President of HCEA from January 2013 until October 2014.

l. B.J.A. was the North American Sales Manager of HCEA until March 2014.  In March 2014, he returned to Korea to work at HHI.

m. J.L. was an attorney retained by HCEA to provide HCEA advice about, among other issues, TPEM and the Clean Air Act.

n.  Defendant HCEA hired a consultant to assist it with the TPEM regulations.

o.  In June and July 2013, the consultant told Defendant HCEA that HHI was in violation of the TPEM regulations and the consultant strongly recommended that Defendant HCEA not import any additional Tier 3 or TPEM engines.  The consultant told an HCEA employee that the violation could result in a penalty of over $13 million.

p.  Defendant HCEA disregarded the consultant's advice and instead continued importing and selling equipment, including equipment with TPEM engines in excess of the regulatory allowance.

q.  Defendant HCEA violated the Clean Air Act regulations by: (a) importing more Tier 3 and TPEM engines than allowed by the Clean Air Act regulations; and (b) filing at least one annual report with false material information and intentionally omitting material information.

r.  Specifically:

   i.  On or about June 15, 2013, in the Northern District of Georgia, B.J.A. sent an email to multiple HCEA and HHI employees suggesting a strategy to fraudulently avoid detection by the EPA of violations of the TPEM regulations.

8

ii.   On or about June 21, 2013, an employee of HCEA's then
parent corporation evaluated and documented potential fines
for violations of the TPEM regulations, finding the penalties
could range from $29 million to $67 million.

iii.   On or about June 25, 2013, in the Northern District of Georgia,
B.J.A. created a notification to be submitted to the EPA that
was intended to fraudulently hide violations of the TPEM
regulations.

iv.   In or about the summer of 2013, in the Northern District of
Georgia, S.M.Y. authorized the import by Defendant HCEA of
17 pieces of equipment with the higher power category
engines, after having been informed that importing that
equipment would violate the TPEM regulations.  The 17
pieces of equipment were subsequently imported into the
United States and sold.

v.   On or about October 10, 2013, B.J.A. sent an email to certain
employees of HHI noting that the 2012 annual report to the
EPA was incorrect and that if they had to lie in the future,
they would need to have a logical explanation for their
decisions in the future.

9

vi.  On or about March 14, 2014, an employee of HHI sent an email to an employee of Defendant HCEA attaching data related to preparing the 2013 annual report to the EPA.

vii.  On or about March 24, 2014, an employee of HHI sent an email to an employee of Defendant HCEA attaching prior TPEM notification letters.

viii.  On or about March 24, 2014, an employee of HHI sent another email to an employee of Defendant HCEA attaching data related to preparing the 2013 annual report to the EPA.

ix.  On or about March 26, 2014, in the Northern District of Georgia, an employee of Defendant HCEA sent additional data to an employee of HHI related to preparing the 2013 annual report to the EPA.

x.  On or about March 30, 2014, in the Northern District of Georgia, an employee of Defendant HCEA sent an email to employees of HHI attaching data related to preparing the 2013 annual report to the EPA.

xi.  On or about March 30, 2014, in the Northern District of Georgia, an employee of Defendant HCEA sent an email to J.L. attaching the proposed 2013 annual report to the EPA.

10

xii.  On or about March 30, 2014, J.L. sent an email to an employee of Defendant HCEA approving the filing of the 2013 annual report.

xiii.  On or about March 31, 2014, in the Northern District of Georgia, an employee of HCEA sent an email to B.J.A. containing the 2013 annual report.

xiv.  On or about March 31, 2014, B.J.A. submitted the 2013 annual report to the EPA, which contained materially false information and omitted material information related to both the higher and the lower power categories.

### Right to Answer Questions, Correct Misstatements, and Make Recommendations

13. The parties reserve the right to inform the Court and the Probation Office of all facts and circumstances regarding the Defendant and this case, and to respond to any questions from the Court and the Probation Office and to any misstatements of fact or law.  Except as expressly stated elsewhere in this Plea Agreement, the parties also reserve the right to make recommendations regarding application of the Sentencing Guidelines. The parties understand, acknowledge, and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed.

11

## Right to Modify Recommendations

14. With regard to the Government's recommendation as to any specific application of the Sentencing Guidelines as set forth elsewhere in this Plea Agreement, the Defendant understands and agrees that, should the Government obtain or receive additional evidence concerning the facts underlying any such recommendation, the Government will bring that evidence to the attention of the Court and the Probation Office.  In addition, if the additional evidence is sufficient to support a finding of a different application of the Guidelines, the Government will not be bound to make the recommendation set forth elsewhere in this Plea Agreement, and the failure to do so will not constitute a violation of this Plea Agreement.

## Cooperation

**General Requirements**

15. The Defendant and its parent company (collectively "related entities") will cooperate fully and truthfully with the Government in the prosecution of this case, the current federal investigation of violations of federal environmental and related criminal laws involving the Transition Program for Equipment Manufacturers, any federal investigation resulting therefrom, and any litigation or other proceedings arising or resulting from any such investigation to which the United States is a party (collectively "Federal Proceeding"). Federal Proceeding includes, but is not limited to, an investigation, prosecution, litigation, or other proceeding regarding obstruction of, the making of a false

12

statement or declaration in, the commission of perjury or subornation of perjury
in, the commission of contempt in, or conspiracy to commit such offenses in, a
Federal Proceeding.  The Defendant's parent for purposes of this Plea Agreement
is Hyundai Construction Equipment Co., Inc., a South Korean company.  The
full, truthful, and continuing cooperation of the Defendant and its related entities
will include, but not be limited to:

    a.  producing to the Government all documents, information, and other
materials, wherever located, not protected under the attorney-client
privilege or the work-product doctrine, in the possession, custody,
or control of the Defendant and its related entities, that are
requested by the Government in connection with any Federal
Proceeding; and

    b.  using its best efforts to secure the full, truthful, and continuing
cooperation of the current and former directors, officers, and
employees of the Defendant and its related entities, as may be
requested by the Government, but excluding the individuals listed
in Attachment A filed under seal.  Such efforts will include, but not
be limited to, making these persons available in the United States
and at other mutually agreed-upon locations at the Defendant's
expense for interviews and the provision of testimony in grand jury,
trial, and other judicial proceedings in connection with any Federal
Proceeding. Current directors, officers, and employees are defined

for purposes of this Plea Agreement as individuals who are directors, officers, or employees of the Defendant or any of its related entities as of the date of signature of this Plea Agreement.

16. The full, truthful, and continuing cooperation of the current directors, officers, and employees of the Defendant and its related entities will be subject to the procedures and protections of this paragraph, and will include, but not be limited to:

    a. producing in the United States and at other mutually agreed-upon locations all documents, including claimed personal documents, and other materials, wherever located, not protected under the attorney-client privilege or the work-product doctrine, that are requested by attorneys and agents of the Government in connection with any Federal Proceeding;

    b. making relevant agents or employees available for interviews in the United States and at other mutually agreed-upon locations, not at the expense of the Government, upon the request of attorneys and agents of the Government in connection with any Federal Proceeding;

    c. responding fully and truthfully to all inquiries of the Government in connection with any Federal Proceeding, without falsely implicating any person or intentionally withholding any information, subject to the penalties of making a false statement or declaration (18 U.S.C.

14

§§ 1001, 1623), obstruction of justice (18 U.S.C. § 1503, et seq.), or

conspiracy to commit such offenses;

d.  otherwise voluntarily providing the Government with any material

or information not requested in (a) - (c) of this paragraph and not

protected under the attorney-client privilege or work-product

doctrine that he or she may have that is related to any Federal

Proceeding; and

e.  when called upon to do so by the Government in connection with

any Federal Proceeding, testifying in grand jury, trial, and other

judicial proceedings in the United States fully, truthfully, and under

oath, subject to the penalties of perjury (18 U.S.C. § 1621), making a

false statement or declaration in grand jury or court proceedings (18

U.S.C. §§ 1001, 1623), contempt (18 U.S.C. §§ 401-402), and

obstruction of justice (18 U.S.C. § 1503, et seq.).

**<u>Sentencing Recommendations</u>**

17. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the Government and the

Defendant agree that the appropriate disposition of this case is, and agree to

recommend jointly that the Court impose a sentence requiring the Defendant to

pay to the United States a criminal fine of $1,950,000 pursuant to 18 U.S.C.

§ 3571(d), payable in full before the fifteenth day after the date of judgment.

15

18. The Government and the Defendant understand that the Court retains complete discretion to accept or reject the recommended sentence provided for in Paragraph 17 of this Plea Agreement.

      a. If the Court does not accept the recommended sentence in Paragraph 17, the Government and the Defendant agree that this Plea Agreement, except for Paragraph 18(b) below, shall be rendered void.

      b. If the Court does not accept the recommended sentence, the Defendant will be free to withdraw its guilty plea (Fed. R. Crim. P. 11(c)(5) and (d)). If the Defendant withdraws its plea of guilty, this Plea Agreement, the guilty plea, and any statement made in the course of any proceedings under Fed. R. Crim. P. 11 regarding the guilty plea or this Plea Agreement or made in the course of plea discussions with an attorney for the Government shall not be admissible against the Defendant in any criminal or civil proceeding, except as otherwise provided in Fed. R. Evid. 410.

## Financial Cooperation Provisions

**Special Assessment**

19. The Defendant agrees that it will pay a special assessment in the amount of $400 by money order or certified check made payable to the Clerk of Court, U.S. District Court, 2211 U.S. Courthouse, 75 Ted Turner Drive SW, Atlanta, Georgia 30303, on or before the day of sentencing.

**Fine/Restitution - Terms of Payment**

20. The Defendant agrees to pay any fine and/or restitution imposed by the Court to the Clerk of Court for eventual disbursement to the appropriate account and/or victim(s).  The Defendant also agrees that the full fine and/or restitution amount shall be considered due and payable in full before the fifteenth day after the date of judgment.  If the Defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, it agrees that the custodial agency and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution.  The Defendant understands that this payment schedule represents a minimum obligation and that, should Defendant's financial situation establish that it is able to pay more toward the fine and/or restitution, the Government is entitled to pursue other sources of recovery of the fine and/or restitution.  The Defendant further agrees to cooperate fully in efforts to collect the fine and/or restitution obligation by any legal means the Government deems appropriate. Finally, the Defendant and it counsel agree that the Government may contact the Defendant regarding the collection of any fine and/or restitution without notifying and outside the presence of it counsel.

## **Voluntary Plea**

21. The Defendant's decision to enter into this Plea Agreement and to tender a plea of guilty is freely and voluntarily made and is not the result of force, threats, assurances, promises, or representations other than the representations contained

17

in this Plea Agreement.  The Government has made no promises or representations to the Defendant as to whether the Court will accept or reject the recommendations contained within this Plea Agreement.

### Corporate Authorization

22. The Defendant shall provide to the Government and the Court a certified copy of a resolution of the Board of Directors of Hyundai Construction Equipment Americas, Inc., affirming that the Board of Directors of Hyundai Construction Equipment Americas, Inc., has authority to enter into the Plea Agreement and has (1) reviewed the Criminal Information in this case and the proposed Plea Agreement or have been fully advised of the contents thereof; (2) consulted with legal counsel in connection with the matter; (3) voted to enter into the proposed Plea Agreement; (4) voted to authorize Hyundai Construction Equipment Americas, Inc., to plead guilty to the charge specified in the Plea Agreement; and (5) voted to authorize the corporate officer identified below to execute the Plea Agreement and all other documents necessary to carry out the provisions of the Plea Agreement.

23. The Defendant Hyundai Construction Equipment Americas, Inc. agrees that a duly authorized corporate officer will appear on behalf of Hyundai Construction Equipment Americas, Inc., and will enter the guilty plea and will also appear for the imposition of sentence.

## Recommendations/Stipulations Non-binding

24. The Defendant understands and agrees that the recommendations of the Government incorporated within this Plea Agreement, as well as any stipulations of fact or guideline computations incorporated within this Plea Agreement or otherwise discussed between the parties, are not binding on the Court and that the Court's failure to accept one or more of the recommendations, stipulations, and/or guideline computations will not constitute grounds to withdraw it guilty plea or to claim a breach of this Plea Agreement.

## Limited Waiver of Appeal

25. LIMITED WAIVER OF APPEAL:  To the maximum extent permitted by federal law, the Defendant voluntarily and expressly waives the right to appeal its conviction and sentence and the right to collaterally attack its conviction and sentence in any post-conviction proceeding (including, but not limited to, motions filed pursuant to 28 U.S.C. § 2255) on any ground, except that the Defendant may file a direct appeal of an upward departure or upward variance above the sentencing guideline range as calculated by the district court.  Claims that Defendant's counsel rendered constitutionally ineffective assistance are excepted from this waiver. The Defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government initiates a direct appeal of the sentence imposed, the Defendant may file a cross-appeal of that same sentence.

## Miscellaneous Waivers

**FOIA/Privacy Act Waiver**

26. The Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

## No Other Agreements

27. There are no other agreements, promises, representations, or understandings between the Defendant and the Government.

## Entry of Agreement

28. The undersigned is authorized to enter this Plea Agreement on behalf of the Defendant as evidenced by the Resolution of the Board of Directors of the Defendant, attached hereto as Exhibit A, and incorporated by reference in this Plea Agreement.

29. A facsimile signature shall be deemed an original signature for the purpose of executing this Plea Agreement.  Multiple signature pages are authorized for the purpose of executing this Plea Agreement.

In Open Court this __14th__ day of __November._____, 2018.

20

SIGNATURE(Attorney for Defendant)
Meredith Jones Kingsley

SIGNATURE (Defendant)
Hyundai Construction Equipment
Americas, Inc.

By:  M.S. Kang, President

SIGNATURE (Assistant United States Attorney)
Christopher J. Huber

SIGNATURE (Assistant Section Chief, Environmental Crimes Section)
Thomas T. Ballantine

    The Defendant has been advised of the Criminal Information against it and

has discussed it with its attorneys.  The Defendant understands the charges and

the elements of the charge that the Government would have to prove to convict it

at a trial.  The Defendant has read the foregoing Plea Agreement and has

carefully reviewed every part of it with its attorneys.  It understands the terms

and conditions contained in the Plea Agreement and voluntarily agrees to them.

The Defendant also has discussed with its attorneys the rights it may have to

appeal or challenge its conviction and sentence, and it understands that the

appeal waiver contained in the Plea Agreement will prevent it, with the narrow

exceptions stated, from appealing its conviction and sentence or challenging its

conviction and sentence in any post-conviction proceeding.  No one has

threatened or forced it to plead guilty, and no promises or inducements have

been made to it other than those discussed in the Plea Agreement.  The

discussions between Defendant's attorneys and the Government toward reaching a negotiated plea in this case took place with its permission.  Defendant is fully satisfied with the representation provided to it by its attorneys in this case.

_____          *NOV. 14, 2018*
SIGNATURE (Defendant)                              DATE
Hyundai Construction Equipment
Americas, Inc.

By:  M.S. Kang, President

    I am Hyundai Construction Equipment Americas, Inc.'s lawyer.  I have carefully reviewed the charges and the Plea Agreement with my client.  To my knowledge, my client is making an informed and voluntary decision to plead guilty and to enter into the Plea Agreement.

_____          11/14/18
SIGNATURE (Defense Attorney)                   DATE
Meredith Jones Kingsley

Alston & Bird LLP                              Hyundai Construction Equipment
1201 West Peachtree Street               Americas, Inc.
Atlanta, Georgia 30309                       6100 Atlantic Boulevard
(404) 881-4793                                   Norcross, GA  30071
                                                         (678) 823-7777

793726 State Bar of Georgia Number

Filed in Open Court

This 14th day of November, 2018

By *Lynn Wood Beck*

22

U. S. DEPARTMENT OF JUSTICE
Statement of Special Assessment Account

This statement reflects your special assessment only. There may be other penalties imposed at sentencing.

| ACCOUNT INFORMATION | |
| --- | --- |
| CRIMINAL ACTION NO.: | 1:18-cr-00379 |
| DEFENDANT'S NAME: | HYUNDAI CONSTRUCTION EQUIPMENT AMERICAS, INC. |
| PAY THIS AMOUNT: | $400 |

Instructions:

1. Payment must be made by **certified check** or **money order** payable to:
   Clerk of court, U.S. District Court
   **\*personal checks will not be accepted\***
2. Payment must reach the clerk's office within 30 days of the entry of your guilty plea
3. Payment should be sent or hand delivered to:
   Clerk, U.S. District Court
   2211 U.S. Courthouse
   75 Ted Turner Drive S.W.
   Atlanta, Georgia  30303
   (Do Not Send Cash)
4. Include defendant's name on **certified check** or **money order.**
5. Enclose this coupon to insure proper and prompt application of payment.
6. Provide proof of payment to the above-signed AUSA within 30 days of the guilty plea.

# Exhibit A

UNANIMOUS WRITTEN CONSENT
IN LIEU OF A SPECIAL MEETING OF
THE BOARD OF DIRECTORS OF
HYUNDAI CONSTRUCTION EQUIPMENT AMERICAS, INC.

The undersigned, being all of the directors of Hyundai Construction Equipment Americas, Inc., an Illinois corporation (the "Corporation"), acting by written consent in lieu of a special meeting of the Board of Directors of the Corporation (the "Board") pursuant to Section 8.45 of the Illinois Business Corporation Act of 1983, as amended (the "Act"), hereby consent to the adoption of the following resolutions:

WHEREAS, the United States Attorney's Office for the Northern District of Georgia (the "U.S. Attorney's Office") has proposed that the Corporation enter into a plea agreement (the "Plea Agreement") and the Board has reviewed the criminal information in the case to which the Plea Agreement relates and the proposed Plea Agreement, or has been fully advised of the contents thereof, and has consulted with legal counsel in connection therewith;

WHEREAS, the Board has determined that it is advisable and in the best interests of the Corporation and its shareholder to enter the Plea Agreement;

NOW, THEREFORE, BE IT RESOLVED, that the Board hereby affirms that it has the authority to approve entry into the Plea Agreement on behalf of the Corporation and hereby authorizes and directs the Corporation to enter into the Plea Agreement and plead guilty to the charges specified in the Plea Agreement and hereby directs an authorized officer of the Corporation to execute and deliver the Plea Agreement on behalf of the Corporation;

FURTHER RESOLVED, that the Board hereby authorizes the appropriate officers of the Corporation to perform such further acts and deeds as may be necessary, desirable, convenient or appropriate, in the judgment of any such appropriate officer, to carry out the purpose and intent of the foregoing resolutions, including, without limitation, payment of any fines or penalties, any filings with or notices to, any supranational, national federal, state or local government or governmental authority, department, commission, board, bureau, agency or instrumentality, and all acts and deeds previously performed by the officers of or counsel for the Corporation prior to the date of these resolutions that are within the authority conferred hereby are hereby ratified, approved and confirmed in all respects; and

FURTHER RESOLVED, that all actions of the Corporation, its officers, directors, agents and employees heretofore taken with respect to the aforesaid matters, are hereby ratified, approved, confirmed and adopted in each and every respect.

This Written Consent may be signed in two or more counterparts, each of which shall be deemed an original, and all of which shall be deemed one instrument. Any signature page signifying approval of this Written Consent may be delivered by facsimile or Portable Document Format (pdf) transmission and shall be binding to the same extent as an original signature page.

*[Signature Page Follows]*

**IN WITNESS WHEREOF,** the undersigned, being the directors Hyundai Construction Equipment Americas, Inc., hereby adopt the foregoing resolutions and certify that such resolutions were adopted without a meeting, effective as of September 20, 2018.

DIRECTORS:

_____
Myung Sik Kang

_____
Young Jun Kim

_____
Jun Cheol Jung